IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| PHILANDER M. COOPER, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )   CIVIL NO. 3:12cv648 <br> ) |
| UNITED STATES OF AMERICA, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' Consent Motion to Approve Compromise Settlement Pursuant to Virginia Code § 8.01-55 (ECF No. 16) after the matter was referred to this Court for settlement (ECF No. 8). On May 30, 2013, the Court conducted a settlement conference that resulted in the parties reaching an agreement in satisfaction of all claims — those pending and those that could have been pursued as a result of the underlying facts. As evidence of their agreement, the parties executed a Memorandum of Understanding ("MOU") (Exhibit 1) and Settlement Agreement (Exhibit 2) setting forth the essential terms of the settlement. Because this is a wrongful death action and involves the reduction of medical liens, the settlement must be approved by the District Court after a hearing as mandated by the Code of Virginia §§ 8.01-55 and 8.01-66.9.[1] A hearing on the Consent Motion to Approve Compromise

---

[1] Plaintiff brought this wrongful death action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. "The FTCA does not itself provide for a substantive cause of action. Rather, in assessing FTCA claims, [courts] apply the substantive law of the state where the alleged tort took place: in this case, the law of Virginia." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009); *see also Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009) (applying Virginia state law to FTCA claim).

Settlement has been scheduled before United States District Judge John A. Gibney, Jr., for August 2, 2013 at 2:00 p.m.[2]

The District Court must conduct a hearing on the proposed settlement for two reasons. First, as to resolution of the wrongful death claim, Virginia Code § 8.01-55 permits "the personal representative of the deceased" to "compromise any claim to damages arising under or by virtue of § 8.01-50 . . . after an action is brought, with the approval of the court in which the action was brought." Code of Virginia § 8.01-55. Following such a compromise, the court must hold a hearing to ensure that all parties in interest were adequately represented in the settlement. *Id.* By doing so, the court ensures that a potential beneficiary has an opportunity to challenge a settlement that may compromise the beneficiary's claim. *Caputo v. Holt*, 217 Va. 302, 304-05, 228 S.E.2d 134, 137 (1976).

Additionally, when the claim involves a medical lien held by the Commonwealth, the court in which the action was brought may "reduce the amount of the liens and apportion the recovery . . . as the equities of the case may appear." Code of Virginia § 8.01-66.9. However, the lien may only be reduced after notice has been given to the lienholder and the plaintiff has made a "good faith" effort to negotiate a compromise with the lienholder.[3] *Id.* If the settlement amount exceeds $250,000, the settlement must be approved by the Governor of the Commonwealth. Code of Virginia § 2.2-514.

---

[2] Notice of the hearing was provided to the Office of the Attorney General for the Commonwealth of Virginia, VCU Health Systems, MCV Physicians and D. Brooks Hundley, Esquire, who serves as the Guardian *Ad Litem* for the deceased's son. (Notice of Hearing (ECF No. 17).)

[3] The MOU required Plaintiff's counsel to negotiate with the Commonwealth over the value of the liens in a manner consistent with the terms of the Settlement Agreement. (MOU at ¶ 3.) Plaintiff's counsel endeavored to do so, but without success. (Consent Motion to Approve Compromise Settlement Pursuant to Virginia Code § 8.01-55 (ECF No. 16) at 4.)

This Court presided over the settlement conference involving the parties on May 30, 2013, and assisted the parties in reaching the resolution set forth in the MOU and the Settlement Agreement. Because the Commonwealth was not represented during the settlement conference, the Court endeavored to ensure that any compromise of liens held by the Commonwealth involved a reduction only to the extent necessary and equitable under the facts of this case. Consequently, for the reasons that follow, this Court recommends approval of the negotiated settlement submitted by the parties.

## I. BACKGROUND

Plaintiff, Administrator of the Estate of Syritta Cooper as well as Ms. Cooper's husband, brought suit against the United States of America under the FTCA, alleging that Drs. Richard Neff and Grace Chiu, employed by Central Virginia Community Health Centers ("CVHS"), negligently treated Ms. Cooper's hyperthyroidism. (Complaint ("Compl.")(ECF No. 1) at ¶¶ 41-42.) Ms. Cooper first sought treatment at CVHS on September 3, 2009, when Dr. Neff prescribed anti-thyroid medication and instructed Ms. Cooper to follow-up in six weeks. (Compl. at ¶ 20.) Ms. Cooper then consulted Dr. Chiu on October 20, 2009, complaining of jaundice resulting from her anti-thyroid medication. (Compl. at ¶ 25.) Dr. Chiu recommended a follow-up visit in two weeks. (Compl. at ¶ 27.)

Immediately following Ms. Cooper's third visit to the doctors on November 3, 2009, she was admitted to the Emergency Department at the Medical College of Virginia Hospital ("MCV"), where she was diagnosed with thyrotoxicosis. (Compl. at ¶¶ 29, 32.) Ms. Cooper remained in the hospital until her death three weeks later. (Compl. at ¶¶ 33-38.) Plaintiff alleges that the doctors acted negligently in failing to correctly respond to Ms. Cooper's hyperthyroidism, normally a treatable illness, which resulted in her death. (Compl. at ¶¶ 42-43.)

Defendant contests liability on the grounds that neither Dr. Neff nor Dr. Chiu breached the applicable standard of care. Defendant maintains that, during Ms. Cooper's appointment on September 3, 2009, Dr. Neff prescribed anti-thyroid medication and recommended that Ms. Cooper seek further aid at MCV, which Defendant's experts contend was not a breach of the standard of care. Further, during Ms. Cooper's visit on October 20, 2009, she was asymptomatic except for displaying signs of jaundice, which Dr. Chiu correctly concluded was caused by the anti-thyroid medication. Therefore, Defendant argues that Dr. Chiu's recommendation of a two-week follow-up was appropriate at that time.

After having reviewed the evidence proffered by the parties during the settlement conference, the Court informed counsel for both parties that Plaintiff's case faced significant proof issues and that a finding in Plaintiff's favor on the issue of liability was unlikely. At the same time, however, the Court pointed out that if Plaintiff did prevail as to liability, the calculation of damages would likely result in a significant recovery for Plaintiff since Ms. Cooper was very young at the time of her death (25 years old), was the sole breadwinner for her family and she left behind a motherless six-year-old son.[4]

Also at issue in this case are the medical liens held by VCU and MCV Physicians resulting from Ms. Cooper's hospitalization, amounting to $455,371 and $30,939, respectively. As a result of these liens, the Commonwealth holds a total lien of $486,310 against Ms. Cooper's estate. Importantly, her estate is unlikely to be able to provide any meaningful payment toward these liens, because Ms. Cooper's husband is unemployed, lives with his family and provides for

---

[4] Ms. Cooper's husband and six-year-old son are the only known beneficiaries of her estate under the Code of Virginia § 8.01-53. Both were ably represented by Stephanie Grana, Esquire, during the settlement conference. After the settlement conference, D. Brooks Hundley, Esquire, was appointed to serve as Guardian *Ad Litem* for the Coopers' six-year-old son.

4

himself and his (and Ms. Cooper's) son. Therefore, the Commonwealth's sole avenue for recovery of these debts lies in Plaintiff's success in this lawsuit. However, as explained above, this Court believes that Defendant maintains a high likelihood of success on the issue of liability. Accordingly, the Commonwealth would unlikely recover any of the debts owed on the medical liens absent a settlement.

## II. PROPOSED SETTLEMENT

### A. The Settlement Agreement

The terms of the settlement agreement require Defendant to pay a total of $300,000 for distribution as follows:

1. $75,000 shall be attributed to the attorney's fees;
2. $42,000 shall be attributed to Plaintiff's cost;
3. $128,000 shall be attributed to Plaintiff, $64,000 of which shall be attributed to each of the two beneficiaries (Ms. Cooper's husband and son);
4. $55,000 shall be attributed to satisfaction of the liens (totaling $486,310) held by the Commonwealth of Virginia on behalf of VCU Health Systems and MCV Physicians.

(MOU at ¶ 1.) The $75,000 in attorney's fees complies with the 25% cap imposed by the FTCA. 28 U.S.C. § 2678. Notably, courts in similar cases not subject to the 25% cap imposed by the FTCA have commonly awarded 33% of the recovery to attorney's fees. *See, e.g., Diaz v. Arlington Anesthesia, Inc.*, 2001 WL 1000820, at *2 (Va. Cir. Ct. 2001) (reducing attorney's fees from 40% to 33% as part of lien resolution).

As to the payment of costs, there can be no quarrel with Plaintiff's counsel ability to recover her costs. "Costs represent counsel's out-of-pocket costs . . . [and warrant recovery] in their entirety." *Tomlin v. Chesapeake Hospital Corporation*, 2005 WL 949042, at *4 (Va. Cir. Ct. 2005) (awarding full costs despite limited recovery because it would not be appropriate for plaintiff's counsel to lose money). Notably, § 8.01-66.9 provides that the Commonwealth's lien

5

"shall be inferior to any lien for payment of reasonable attorney's fees and costs, but shall be superior to all other liens created by the [statute]." Code of Virginia § 8.01-66.9. Consequently, this Court believes that no real controversy exists as to the portions of the recovery dedicated to attorney's fees and costs.

B. <u>Wrongful Death Claim</u>

The Code of Virginia provides that a court may award damages in a wrongful death action that "seem fair and just" for:

> sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent; expenses for the care, treatment, and hospitalization of the decedent incident to the injury resulting in death; reasonable funeral expenses; and punitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

Code of Virginia § 8.01-55. However, Virginia caps medical malpractice awards at $2 million. Code of Virginia § 8.01-581.15.

As discussed above, Plaintiff's case faces significant proof problems. But those litigation risks must be balanced against the potential amount of Plaintiff's recovery if Plaintiff prevails as to liability — most likely near the $2 million cap — due to Ms. Cooper's young age, her position as the sole provider for her family and the loss of a mother for Ms. Cooper's six-year-old son. Thus, in the view of this Court, the settlement amount of $300,000 represents a very reasonable resolution for both sides, since each side bore significant risks if they moved forward to trial.

C. <u>Lien Reduction</u>

The true issue in this case lies in the reduction of the liens held by the Commonwealth from a total of $486,310 to $55,000. Under the proposed settlement, the Commonwealth would

only recover slightly more than 11% of the liens at issue. This Court does not take lightly its recommendation for approval of such a significant reduction, because the Court recognizes that the taxpayers of this Commonwealth will ultimately absorb any unpaid balance from the liens. *Ouivers v. Suffee*, 2001 WL 1590463, at *1 (Va. Cir. Ct. 2001). However, the appropriateness of the proposed reduction cannot be assessed solely based on the percentage of recovery of the full lien.

As previously noted, the settlement amount of $300,000 represents a reasonable resolution of the case based on the risks borne by both sides. After attorney's fees ($75,000) and costs ($42,000) are deducted, only $183,000 remains for Ms. Cooper's estate and the Commonwealth's liens. Thus, even if the Commonwealth received the full amount of the funds that remain, the Commonwealth would still only recover 37% of their liens. And in that scenario, Ms. Cooper's impoverished husband and son — those who truly suffered "sorrow, mental anguish, and solace" — would recover nothing.

This Court therefore believes that the more appropriate assessment as to the reasonableness of the reduction of the Commonwealth's liens occurs when focusing on the fact that the Commonwealth would recover $55,000 of the remaining $183,000, which constitutes 30% of this amount. And while the estate would receive the remaining $128,000, the recovery will be divided in half with Ms. Cooper's husband and six-year-old son each receiving $64,000, which constitutes roughly 35% of the remaining funds. This Court believes that a 35/35/30 division is reasonable under the circumstances of this case.

When a claim involves a medical lien where the lienholder is the Commonwealth, Virginia Code § 8.01-66.9 provides that the court in which the action was brought may "reduce the amount of the liens and apportion the recovery . . . as the equities of the case may appear."

Code of Virginia § 8.01-66.9. In doing so, the court should consider both what constitutes a just recovery for the plaintiff's injuries and reasonable compensation for plaintiff's attorneys. *Commonwealth v. Huynh*, 262 Va. 165, 171, 546 S.E.2d 677, 680 (2001). If the parties reach a settlement contingent upon a reduction of the lien, the plaintiff's counsel must attempt to negotiate in good faith with the Commonwealth's Attorney General to achieve such a reduction. *Id.* at 169, 546 S.E.2d at 678. If the negotiation proves unsuccessful, the plaintiff can subsequently file a motion in the court in which the suit is pending to reduce the Commonwealth's lien and apportion the settlement between the plaintiff, the plaintiff's attorneys and the Commonwealth. Code of Virginia § 8.01-66.9.

The reduction is entirely a matter of judicial discretion, except that the trial court may not completely extinguish the Commonwealth's liens. *Huynh*, 262 Va. at 172, 546 S.E.2d at 680. In applying this statute, Virginia courts have approved substantial reductions of the original lien amount for the purpose of promoting binding settlements. *See Rector & Visitors of Univ. of Va. v. Harris*, 239 Va. 119, 122, 125, 387 S.E.2d 772, 774, 776 (1990) (approving lien reduction of 93%); *Commonwealth v. Smith*, 239 Va. 108, 111-13, 387 S.E.2d 767, 769-70 (1990) (approving lien reduction of roughly 75%). In assessing the reasonableness of the reduction, the Supreme Court of Virginia merely instructs that the trial court must exercise its discretion to "apportion" the recovery in a manner that is equitable, as long as the trial court does not "wholly disregard the claim of the Commonwealth in order to benefit the injured party or her attorneys." *Huynh*, 262 Va. at 172, 546 S.E.2d at 680.

Several reasons support the reasonableness of a 35/35/30 split of the remaining $183,000. First, in light of Mr. Cooper's unemployment and limited financial resources, the Commonwealth would recover none of the funds from the liens absent a judgment in this case.

And it bears remembering that it was Plaintiff — not the Commonwealth — that instituted this lawsuit and in the absence of Mr. Cooper initiating this action, the Commonwealth would be left with no recovery. Moreover, Mr. Cooper is the one who has had to endure reliving his wife's death during the litigation of this case.

Further, Defendant's high likelihood of success at trial — a point that cannot be overstated in light of the facts of this case — supports approval of the settlement. Absent a reasonable amount apportioned to Plaintiff, Plaintiff would be encouraged to roll the dice and "risk the hazards of trial in the hope of a recovery large enough to discharge the debt [the Commonwealth's liens], pay his attorney, and leave a substantial balance to him." *Harris*, 239 Va. at 124-25, 387 S.E.2d at 775. Such a position would thwart the strong policy interests favoring settlement. *Id.* at 124-25, 387 S.E.2d at 775; *Smith*, 239 Va. at 111-12, 387 S.E.2d at 769-70 ("The purpose of the amendment [to § 8.01-66.9] was to reduce expense and delay, to avoid litigation, and to promote settlements."). Moreover, in view of the strength of Defendant's case, a trial would likely result in no recovery for the Commonwealth. In other words, from this Court's perspective, settlement provides the only realistic opportunity for the Commonwealth to recover *any* portion of the liens, but settlement may only occur if Plaintiff receives a sufficient recovery to provide for both Mr. Cooper and the Coopers' six-year-old son.

The payment of $64,000 to each beneficiary of Ms. Cooper's estates serves the separate interests of both Mr. Cooper and his son, while also supporting a compelling, societal interest. Mr. Cooper's portion of the settlement enables him to provide for himself and his son in the immediate future, while he seeks employment and a stable living situation. The annuity established for the Coopers' six-year-old son provides for the child's long-term welfare. And promoting the welfare of a child serves a compelling state interest. *Cf. Stadtler v. Siperko*, 52

Va. App. 81, 89, 661 S.E.2d 494, 498 (Va. Ct. App. 2008) (recognizing a compelling state interest in a child's health or welfare); *Anonymous B v. Anonymous C*, 51 Va. App. 657, 675, 660 S.E.2d 307, 316 (Va. Ct. App. 2008) ("[w]hen addressing matters concerning a child, . . . the paramount consideration of a trial court is the child's best interests.") (quoting *Logan v. Fairfax County Dep't of Human Dev.*, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (Va. Ct. App. 1991)); *see also Farley v. Farley*, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (Va. Ct. App. 1990) ("In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."). The apportionment of the recovery as agreed upon by the parties constitutes an equitable division of the settlement amount amongst the interests of Plaintiff, Ms. Cooper's young son, Plaintiff's counsel and the Commonwealth.

Because the Court finds that the settlement represents a fair and equitable resolution of the case to provide for Ms. Cooper's beneficiaries and satisfies an equitable portion of Ms. Cooper's outstanding medical liens in light of the weaknesses in Plaintiff's case, the Court RECOMMENDS that the District Court APPROVE the settlement and dismiss the case with prejudice.

**The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to so file will result in a waiver of any objections to this report.**

Let the Clerk send copies of this Report and Recommendation to counsel of record, Assistant Attorney Generals Rodolfo R. Remigio and Christine Harris-Lipford, Associate Director Terri Parmer Rositch of the VCU Health System/MCV Physicians, and United States

District Judge John A. Gibney, Jr.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: July 1, 2013